UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EDDIE SNYDER HILL,

        Plaintiff,

vs.                                    Case No.  2:11-cv-242-FtM-29SPC

LEE COUNTY SHERIFF'S OFFICE, DEPUTY
JACK LONG, DETECTIVE BARBARA BERG,
SGT. JONATHAN WASHER, MIKE SCOTT,
EVERBANK  and  FRANK  HEINZ,  all
individually and in their official
capacities,

        Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court on defendants', Lee County
Sheriff's Office, Community Service Aide Jack Long[1], Detective
Barbara Berg, Sergeant Jonathan Washer, and Sheriff Mike Scott,
Motion to Dismiss or, in the Alternative, Motion for Summary
Judgment (Doc. #44) filed on December 27, 2011.  Plaintiff filed a
response on January 23, 2012 (Doc. #47) and an amended response on
July 4, 2012 (Doc. #73).  Also before the Court is defendants',
Everbank and Frank Heinz, Motion to Dismiss (Doc. #66) filed on
April 18, 2012.  Plaintiff filed a response on April 30, 2012.
(Doc. #68).  For the reasons set forth below, both motions are
granted and the Court dismisses Counts I and IV through XI pursuant

_____

[1]The Amended Complaint incorrectly named this defendant Deputy
Jack Long.

to Fed. R. Civ. P. 12(b)(6) and Counts II and III pursuant to Fed. R. Civ. P. 56.

**I.**

**A.  Motion to Dismiss**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded factual allegations in a complaint as true and take them in the light most favorable to plaintiff. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>Christopher v. Harbury</u>, 536 U.S. 403, 406 (2002).  "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." <u>James River Ins. Co. v. Ground Down Eng'g, Inc.</u>, 540 F.3d 1270, 1274 (11th Cir. 2008) (<u>citing</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007)); <u>see also</u> <u>Edwards v. Prime, Inc.</u>, 602 F.3d 1276, 1291 (11th Cir. 2010).  The former rule-that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004)-has been retired by <u>Twombly</u>. <u>James River Ins. Co .</u>, 540 F.3d at 1274.  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662

-2-

(2009).  The Court need not accept as true legal conclusions or mere conclusory statements.  Id.

**B.  Summary Judgment**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  Id.

The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 840 (11th Cir. 2000).  In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. at 322; Hilburn

v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

In ruling on a motion for summary judgment, the Court is required to consider the evidence in the light most favorable to the nonmoving party. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000); Jaques v. Kendrick, 43 F.3d 628, 630 (11th Cir. 1995). The Court does not weigh conflicting evidence or make credibility determinations. Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d at 1225. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir. 2001)(citing Clemons v. Dougherty Cnty., 684 F.2d 1365, 1369 (11th Cir. 1982)). However, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003). A genuine issue of material fact exists only if there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor. Id.

## II.

The following facts are undisputed and taken in the light most favorable to the non-moving party, Hill:

On November 17, 2008, an individual entered the Bank of Florida[2] in Lee County, Florida and attempted to cash a fraudulent check in the amount of $2,867.56 which was made out to plaintiff Eddie Snyder Hill (Hill or plaintiff).  In attempting to cash the fraudulent check, the individual showed plaintiff's Florida State driver's license and social security card.  The banker was Frank Heinz (Heinz).

The following day, November 18, 2008, Deputy Jack Long from the Lee County Sheriff's Office was dispatched to the bank to investigate the incident.  Heinz filled out an affidavit, which was notarized by Long, that stated that "a black male" had entered the bank and attempted to cash a fraudulent check.  Heinz attested that the individual provided a check, a social security card, and a driver's license.  The November 18, 2008, affidavit does not specifically identify the perpetrator.

On December 4, 2008, Detective Barbara Berg was assigned to the case and re-interviewed Heinz.  On the same day, Heinz identified Hill in a photographic line up and completed a "Bank Teller/Clerk/Witness Statement" that identified Hill as the perpetrator.

On December 15, 2008, Detective Barbara Berg submitted a probable cause affidavit asserting there was probable cause to

---

[2]Defendant Everbank owns the Bank of Florida.  (Doc. #60, p. 1.)

arrest Eddie Hill for uttering a forged instrument in violation of Florida Statutes § 831.02 and committed grand theft in violation of Florida Statutes § 812.014.  On April 15, 2009, a warrant for Hill's arrest was issued.  Hill, who was incarcerated on an unrelated charge in Hillsborough County Jail, was transferred to Lee County Jail pursuant to the arrest warrant on June 23, 2009.[3] On December 11, 2009, the plaintiff was released and he was not prosecuted for the alleged crimes.[4]

Hill contends that his identity was stolen and he was not the individual who attempted to cash the fraudulent check.  He contends that there are 24 color surveillance photographs that clearly demonstrate that he was not the perpetrator and that the investigators turned a "blind eye" to this evidence.  As a result, he initiated this action.  In his Amended Complaint, Hill asserts the following eleven causes of action, which plaintiff purports are pursuant to Section 1983: Due Process (Count I); False Arrest (Count II), False Imprisonment (Count III), Conspiracy (Count IV), Perjury (Count V), Excessive Punishment (Count VI), Intentional Infliction of Emotional Distress (Count VII), Respondeat Superior

---

[3]Hill was transferred after he was released on the unrelated charge.

[4]The defendants contend that the charges were *nolle prosqued* by the State Attorney's Office because a booking photograph of Hill, taken two days after the attempted check cashing, depicted Hill with a beard.  Plaintiff asserts that the charges were dropped.

(Count VIII), Deliberate Indifference (Count IX), Falsifying Official Documents (Count X), and Profiling (Count XI). The Amended Complaint does not specify what counts are asserted against which defendants and construed liberally, it seeks to assert all eleven claims against each defendant. In addition, the heading of the Amended Complaint indicates that Hill seeks to assert claims against the defendants in both their individual and official capacities.

Defendants Heinz and Bank of Florida (collectively, the Bank defendants) filed their motion to dismiss pursuant to Fed. R. Fed. P. 12(b)(6). Defendants Lee County Sheriff's Office, Community Service Aide Jack Long (Long), Detective Barbara Berg (Berg), Sergeant Jonathan Washer (Washer), and Sheriff Mike Scott (Scott) (collectively, the State defendants) filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and in the alternative Rule 56. Both motions seek to dismiss the Amended Complaint in its entirety.

## III.

### A.  Motions to Dismiss

#### 1.  State Law Claim

Although Hill purportedly brings all of his claims pursuant to 42 U.S.C. § 1983, Count XII asserts a claim for intentional infliction of emotional distress. This is not a constitutional

claim and instead arises under Florida law.  To show intentional infliction of emotional distress, a plaintiff must show that:

> (1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result;
>
> (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;
>
> (3) the conduct caused emotion[al] distress; and
>
> (4) the emotional distress was severe.

Gallogly v. Rodriguez, 970 So. 2d 470, 471 (Fla. 2d DCA 2007)(citations omitted).  "[T]he plaintiff must show conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Byrd v. BT Foods, Inc., 948 So. 2d 921, 928 (Fla. 4th DCA 2007) (quotations and citations omitted).  Whether the alleged conduct satisfies this high standard is a legal question "for the court to decide as a matter of law."  Vance v. Southern Bell Tel. & Tel. Co., 983 F.2d 1573, 1575 n. 7 (11th Cir. 1993) (quoting Baker v. Florida Nat'l Bank, 559 So. 2d 284, 287 (Fla. 4th DCA 1990)).

Hill has not pled any set of facts that plausibly give rise to a claim for intentional infliction of emotional distress.  See, e.g., Valdes v. GAB Robins N. Am., Inc., 924 So. 2d 862, 866 (Fla. 3d DCA 2006) (investigating and then making false statements to state agency which lead to plaintiff's arrest was "not the type of

-8-

conduct that is so outrageous in character and extreme in degree as to go beyond the bounds of decency and be deemed utterly intolerable in a civilized society."), <u>review denied</u>, 949 So. 2d 200 (Fla. 2007); <u>Williams v. Worldwide Flight Servs., Inc.</u>, 877 So. 2d 869, 870-71 (Fla. 3d DCA 2004) (constant use of derogatory racial terms, threats, and false accusations failed to state cause of action for intentional infliction of emotional distress); <u>Lay v. Roux Labs., Inc.</u>, 379 So. 2d 451, 452 (Fla. 1st DCA 1980) (same);; <u>Koutsouradis v. Delta Air Lines, Inc.</u>, 427 F.3d 1339, 1345 (11th Cir. 2005) (insults and indignities do not support claim for intentional infliction of emotional distress); <u>Gonzalez-Jimenez de Ruiz v. United States</u>, 378 F.3d 1229, 1231 (11th Cir. 2004) (deception regarding father's terminal medical condition, failure to provide family with reasonable access to father during his illness, failure to inform family of father's death, providing substandard medical care, and delay in transporting remains failed to state a claim of intentional infliction of emotional distress); <u>Legrande v. Emmanuel</u>, 889 So. 2d 991, 995 (Fla. 3d DCA 2004) (clergyman falsely branded a thief in front of parishioners failed to state claim of intentional infliction of emotional distress). Therefore, this claim is dismissed against all defendants pursuant to Fed. R. Civ. P. 12(b)(6).

## 2. Miscellaneous Claims

Count V asserts a claim for perjury and Count X asserts a claim for falsifying official documents. Specifically, Hill contends that Heinz's Bank Teller/Clerk/Witness Statement and Berg's Probable Cause Affidavit contain false statements and material misrepresentations.

Construed liberally, the Court infers that plaintiff is attempting to bring both counts pursuant to 18 U.S.C. § 1621.[5] There is no private cause of action for perjury or false declarations. See Dodd v. Woods, NO. 8:09-cv-1872-T-27EAP, 2010 WL 3747007, at *7 (M.D. Fla. Aug. 31, 2010). To the extent Counts V

---

[5]18 U.S.C. § 1621 provides any person:

(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

and X seek to assert a claim pursuant to 18 U.S.C. § 1621, the claim is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

The Court further notes that these counts may also be construed as a Fourth Amendment violation by Berg. "[A] police officer may be held liable under 42 U.S.C. § 1983 for submitting an application for an arrest warrant that contains false information." Holmes v. Kucynda, 321 F.3d 1069, 1083 (11th Cir. 2003); citing Malley v. Briggs, 475 U.S. 335, 346 (1986). To the extent that Counts V and X seek to assert a Fourth Amendment claim against Berg, this is discussed in more detail in Section III(B)(2)(a). To the extent that Counts V and X seek to assert a Fourth Amendment claim against Heinz, this claim is dismissed for the reasons set forth in Section III(A)(3)(a)(ii).

### 3.  Section 1983 Claims

The remaining claims, construed liberally, are appropriately brought pursuant to Section 1983. Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb Cnty., 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition,

a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation.  Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1059 (11th Cir. 2001); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995); Tittle v. Jefferson Cnty. Commn, 10 F.3d 1535, 1541 n. 1 (11th Cir. 1994).  Hill asserts that the defendants have violated his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

### a.   Improper Defendants

### i.   Lee County Sheriff's Office

The Lee County Sheriff's Office is not a "person" who "acts under color of State Law" for purposes of Section 1983 and is therefore an improper defendant.  "[P]olice departments are not usually considered legal entities subject to suit, but capacity to sue or be sued shall be determined by the law of the state in which the district court is held."  Williams v. Miami-Dade Police Dep't, No. 08-10800, 2008 WL 4726101, at *3 (11th Cir. Oct. 28, 2008) (quoting Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992)(internal citations and quotations omitted)).  Under Florida law, police departments are not legal entities amendable to suit. See, e.g., Williams, 2008 WL 4726101, at *3 (citing Masson v. Miami-Dade Cnty., 738 So. 2d 431, 432 (Fla. 3d DCA 1999)); Florida City Police Dep't v. Corcoran, 661 So. 2d 409, 410 (Fla. 3d DCA

1995).  Thus, all remaining claims asserted against this defendant are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### ii.  Everbank

Likewise, defendant Everbank is not a "person" who "acts under color of State Law" for purposes of Section 1983 and is therefore an improper defendant.[6]  Private banks (and their executives) are not "state actors."  See Morast v. Lance, 807 F.2d 926, 931 (11th Cir. 1987)(nationally chartered bank did not act under color of federal law); Givens v. Citbank, N.A., 2010 WL 2306412, at *3 (E.D. Va. June 3, 2010)(no nexus between state and alleged fraudulent action by bank); Bailey v. Harleysville Nat. Bank & Trust Co., 2005 WL 2012024, at *4 (E.D. Pa. August 22, 2005) (citing, e.g., Andrews v. Federal Home Loan Bank of Atlanta, 998 F.2d 214, 216 (4th Cir. 1993) (federal home loan bank, though regulated by the federal government, is not state actor); Rogers v. Bucks Cnty. Domestic Relations Section, 773 F. Supp. 768, 775 n. 4 (E.D. Pa. 1991), aff'd, 959 F.2d 1268, 1271 n. 4 (3d Cir. 1992) (bank was not a state actor for purposes of 42 U.S.C. § 1983)).  Accordingly, the Court grants the Everbank's motion and all claims asserted against this defendant are dismissed.

---

[6]In addition, the Court also notes there are simply no allegations of any wrongdoing on behalf of Everbank contained in the Amended Complaint.

### iii.  Frank Heinz

Hill makes no allegations in his Complaint that demonstrate that Heinz is a "state actor."  Rather, he alleges that Heinz was an employee of the Bank of Florida.  Therefore, Heinz is a "private actor" rather than a "state actor."

A private actor, may, however, be considered a state actor for purposes of Section 1983 under certain circumstances.  Heinz can qualify as a "state actor" under § 1983 only if one of the following three tests is satisfied: (a) a "state compulsion test," wherein the state has coerced or significantly encouraged the violative conduct; (b) a "public function test," wherein private parties perform a public function that is traditionally the exclusive prerogative of the state; and (c) a "nexus/joint action test," wherein the state is in a position of interdependence with the private party, such that the state and private actor are essentially joint participants in an enterprise. Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001); see also Weaver v. James Bonding Co., Inc., 442 F. Supp. 2d 1219, 1223 (S.D. Ala. 2006); Green v. Abony Bail Bond, 316 F. Supp. 2d 1254, 1259-60 (M.D. Fla. 2004).  The "state actor" determination is made on a case-by-case basis. See Focus on the Family v. Pinellas Suncoast Transit Authority, 344 F.3d 1263, 1277 (11th Cir. 2003).

Based on the well-pleaded allegations of the Complaint, there is no conceivable basis for finding that Heinz could qualify as a

"state actor" who might be subject to liability under § 1983.   To the contrary, Heinz was a purely private actor who reported a crime committed at the Bank.   There is no indication that the state coerced or encouraged Heinz to act in the manner he did, that Heinz was performing public functions that are traditionally the exclusive province of the state, or that the state was a joint participant with Heinz in the conduct at issue.   Thus, Hill has not pled any set of facts that give rise to a finding that Heinz was a "state actor" for purposes of § 1983.   All of the remaining claims against this defendant are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### b.  Insufficient Allegations

The Court further finds that plaintiff's Amended Complaint fails to plead any allegations which give rise to a plausible basis for Hill's Section 1983 claims of due process (Count I), conspiracy (Count IV), excessive punishment (Count VI), respondeat superior (Count VIII), deliberate indifference (Count IX), and profiling (Count XI).   Each are discussed in turn.

### i.  Due Process

Several of Hill's counts incorporate the allegation that his Due Process rights have been violated by the defendants. Therefore, the Court dismisses Count I only to the extent that it is duplicative of the other Counts asserted in the Amended Complaint.

### ii.  Conspiracy

To prove a Section 1983 claim for conspiracy, a plaintiff must demonstrate that the parties "reached an understanding to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy." Shell v. U.S. Dep't of Housing and Urban Dev., 355 F. App'x 300, 307 (11th Cir. 2009) quoting Bailey v. Bd. of Cnty. Cmm'rs, 956 F.2d 1112, 1122 (11th Cir. 1992). "In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed . . . . A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy." Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984). A conspiracy alleged pursuant to Section 1983 must also allege that the injury was caused by a person who is a state actor, or whose conduct is chargeable to the state. Scott v. Dixon, 720 F.2d 1542, 1545 (11th Cir. 1983) cert denied, 469 U.S. 832 (1984).

Here, there is no factual basis asserted in the Amended Complaint that give rise to a Section 1983 conspiracy. Hill simply makes conclusory allegations that a conspiracy existed but provides no set of facts that demonstrate that this allegation plausible. Accordingly, this Count is dismissed against all defendants.

### iii.  Excessive Punishment

Count VI asserts a claim for excessive punishment.  Defendants contend that because Hill was a pretrial detainee, he cannot assert a claim under the Eighth Amendment because it is not applicable to pretrial detainees.

Liberally construing the Complaint, Hill essentially complains that because he was transferred to the Lee County Jail pursuant to the arrest warrant and was falsely accused of a crime, he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.  He also contends that the defendants knowingly and deliberately inflicted "crule [sic] unnecessary and wanton infliction of mental and physical pain and suffering that no official under the entire executive branch or associated body would have possibly inflected [sic] under no kind [sic] of circumstances."  (Doc. #19, p. 17.)

As a pretrial detainee, plaintiff had no Eighth Amendment rights.  "In the case of a pre-trial detainee . . . the Eighth Amendment prohibitions against cruel and unusual punishment do not apply."  Cook v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir. 2005) (citation and quotation omitted).  Rather, plaintiff's right against cruel and unusual punishment as a pretrial detainee is premised on the due process clause of the Fourteenth Amendment.  Cook, 402 F.3d at 1115.  See also Purcell v. Toombs Cnty., Ga., 400 F.3d 1313, 1318 n. 13 (11th Cir. 2005);

Wilson v. Blankenship, 163 F.3d 1284, 1291 (11th Cir. 1998). However, the legal standards under the Eighth Amendment and the Fourteenth Amendment due process clause are the same, and the Eighth Amendment case law is applicable. Cook, 402 F.3d at 1115; Taylor v. Adams, 221 F.3d 1254, 1257 n. 3 (11th Cir. 2000); Lancaster v. Monroe Cnty., Ala., 116 F.3d 1419, 1425, n. 6 (11th Cir. 1997).

To the extent that Hill seeks to sustain a cause of action for his arrest on the theory that such arrest was cruel and unusual punishment, this claim fails. There is no basis that an arrest, in and of itself, constitutes cruel and unusual punishment. Further, although Hill makes a conclusory allegation that the defendants subjected him to physical punishment, he provides no set of facts that support this allegation. As there is no plausible basis for this claim, Count VI is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### iv. Respondeat Superior

Count VIII asserts a claim for "respondeat superior." Construed liberally, Hill seeks to hold supervisory officials liable for the alleged § 1983 violations of their subordinates. The only supervisors identified in the Complaint are Sergeant Jonathan Washer, Detective Berg's supervisor, and presumably Sheriff Mike Scott as the "policy holder for the Lee County Sheriff Office." (Doc. #19, p. 12.) Therefore, these are the only three

-18-

remaining defendants who would fall under the purview of respondeat superior liability.

"[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) quoting West v. Tillman, 496 F.3d 1321, 1328 (11th Cir. 2007).   To maintain a claim against a supervisory defendant, the plaintiff must allege (1) the personal involvement of the supervisor in the violation of the plaintiff's constitutional rights, (2) the existence of either a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts that support an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged constitutional deprivation that he then failed to correct.   See West, 496 F.3d at 1328-29 (listing factors in context of summary judgment).   A supervisor is not liable under Section 1983 for mere negligence in the training or supervision of his employees.   Greason v. Kemp, 891 F.2d 829, 836-37 (11th Cir. 1990).

The Amended Complaint is devoid of any set of facts that demonstrate that Sergeant Washer or Sheriff Scott were personally involved in obtaining the warrant for Hill's arrest or the ultimate arrest and detainment of Hill.   Nor are there any allegations that

infer the  existence of either a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights. There are also no facts alleged that support an inference that either of these supervisors directed the alleged unlawful actions or knowingly failed to prevent them.  Finally, Hill makes no allegations of a history of widespread abuse that put either of the supervisors on notice of an alleged constitutional deprivation that either supervisor then failed to correct.  As a result, Count VIII is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### v.  Deliberate Indifference

Count IX asserts a claim for deliberate indifference. Construed broadly, Hill's allegations of deliberate indifference relate to his 1983 claim based on the theory of respondeat superior.  As mentioned above, a custom or policy which results in deliberate indifference to constitutional rights can give rise to a Section 1983 violation.  Hill's Complaint alleges that he had a right to be protected "from defendants [sic] custom and policy of deliberate indifference toward his federal rights which were violated by abuse of government power through the alleged allegations." (Doc. #19, p. 15.)  However, plaintiff's complaint contains no allegations which demonstrate that such a custom and policy of deliberate indifference actually existed.  Accordingly, there is no factual basis to support this claim.

To the extent Hill seeks to assert a claim for deliberate indifference to a medical need, a pre-trial detainee alleging a constitutional deliberate indifference claim "must sufficiently allege 'both an objectively serious medical need and that a Defendant acted with deliberate indifference to that need.'" Harper v. Lawrence Cnty., Ala., 592 F.3d 1227, 1233 (11th Cir. 2010) (quoting Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008) (footnote omitted)). There are simply no allegations in the Complaint that give rise to such a claim. Accordingly, Count IX is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### vi. Profiling

Count XI seeks to assert a claim for "profiling." Construing the Complaint liberally, plaintiff seeks to assert a selective enforcement claim in violation of the Equal Protection clause.

The Equal Protection Clause of the Fourteenth Amendment "prohibits selective enforcement of the law based on considerations such as race." Whren v. U.S., 517 U.S. 806, 813 (1996). "'Ordinary equal protection standards'" also govern claims, such as plaintiff's, that law enforcement officers engaged in racial profiling and other racially discriminatory enforcement tactics. U.S. v. Barlow, 310 F.3d 1007, 1010 (7th Cir. 2002) (quoting U.S. v. Armstrong, 517 U.S. 456, 465 (1996)). To prevail on a selective enforcement claim, plaintiff must present evidence that individuals of a different race could have been subjected to a search of their

premises and/or arrested for the same crime, but were not. <u>Swint v. City of Wadley, Ala.</u>, 51 F.3d 988, 1000 (11th Cir. 1995) ("Absent some evidence of racially disproportionate arrests compared to the actual incidence of violations by race, there is no basis for inferring racially selective law enforcement."); <u>see also U.S. v. Bell</u>, 86 F.3d 820, 823 (8th Cir. 1996) ("To establish discriminatory effect in a race case, the claimant must show people of another race violated the law and the law was not enforced against them."); <u>U.S. v. Duque-Nava</u>, 315 F.Supp.2d 1144, 1152 n.15 (D.Kan. 2004) (to prove Fourteenth Amendment selective enforcement claim, arrestee must "make a credible showing that a similarly-situated individual of another race could have been, but was not, arrested or referred for federal prosecution for the offense for which the defendant was arrested and referred").

There are simply no allegations in the Complaint that support an Equal Protection claim. Accordingly, Count XI is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**B. Motion for Summary Judgment**

The only claims that remain are Hill's claims for False Arrest (Count II), and False Imprisonment (Count III) against Community Service Aide Jack Long, Detective Barbara Berg, Sergeant Jonathan Washer, and Sheriff Mike Scott, and plaintiff's claims for Perjury (Count V) and Falsifying Official Documents (Count X), to the extent they seek to assert a claim against Berg for submitting a

warrant that knowingly and recklessly contained false statements in violation of the Fourth Amendment.  These defendants contend that they are entitled to summary judgment because there was probable cause, or at the very least arguable probable cause, to arrest Hill and therefore they enjoy qualified immunity.  Hill, on the other hand, contends that the surveillance pictures affirmatively show that Hill was not the perpetrator.  Hill asserts that the existence of these photographs negates the defendants' assertion of probable cause.

### 1.  Official Capacity Claims

At the outset, the Court notes that the Amended Complaint indicates that all claims are brought against each of the defendants in both their official and individual capacities.  In their motion, the defendants only substantively address the individual capacity claims and make no arguments with respect to the official capacity claims.  Nonetheless, the Court finds that the official capacity claims are due to be dismissed.

A claim against a state or municipal officer in his or her official capacity is treated as a claim against the entity itself.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  In that respect, any plaintiff bringing a § 1983 claim against a municipality based on the acts of one of its officers must prove two things.  First, plaintiff must sufficiently allege a constitutional violation.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).  Second,

the "plaintiff suing a municipality under § 1983 must show that the municipality itself injured the plaintiff by having in place a policy or custom which violated the plaintiff's rights." <u>Buckner v. Toro</u>, 116 F.3d 450, 451 (11th Cir. 1997) (citing <u>Monell v. Dept. of Social Servs. of New York</u>, 436 U.S. 658 (1978). Under <u>Monell</u>, the municipal "policy" or "custom" must be the moving force behind the constitutional violation and "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by the municipality can the failure be properly thought of as an actionable city 'policy.'" <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 379 (1989).

Additionally, "[a] municipality may, in certain circumstances, be held liable under § 1983 for constitutional violations resulting from its failure to train its employees." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 379 (1989). One of the circumstances is where the "failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact." <u>Id.</u>

Here, Hill has not alleged that Lee County has injured him by having a policy or custom which violates his rights. Nor has he pled any set of facts that suggest that there has been any failure to train employees. Accordingly, Hill has failed to state a claim against these defendants in their official capacities.

## 2.  Individual Capacity Claims

As an initial matter, the Court notes that the Complaint seemingly suggests that all of the remaining defendants are responsible for plaintiff's arrest and resulting detainment. However, the facts alleged in the Complaint demonstrate that Long's only involvement in this matter was his investigation on the day of the crime, which was subsequently taken over by Berg.  Mike Scott is not alleged to have had any personal involvement, and Jonathan Washer's involvement is limited to reviewing Barbara Berg's work. Nonetheless, because the Court finds that qualified immunity is appropriate, the Court will proceed as if these claims are properly asserted against all four defendants.

The Fourth Amendment, which is applicable to the States through the Fourteenth Amendment, guarantees the right against unreasonable searches and seizures. U.S. Const. amend. IV.  An arrest qualifies as a "seizure" of a person under the Fourth Amendment.  Ashcroft v. al-Kidd, --- U.S. ----, ----, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011); California v. Hodari D., 499 U.S. 621, 624 (1991).  The reasonableness of an arrest is "turns on the presence or absence of probable cause" for the arrest.  Case v. Eslinger, 555 F.3d 1317, 1326–27 (11th Cir. 2009) (citing Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1137 (11th Cir. 2007)).  An arrest without probable cause violates the Fourth Amendment, Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997), and a

cause of action for damages may be asserted under § 1983, <u>Brown v. City of Huntsville, Ala.</u>, 608 F.3d 724, 734 n.15 (11th Cir. 2010). Plaintiff has the burden of establishing the absence of probable cause to succeed on a § 1983 claim.  <u>Rankin v. Evans</u>, 133 F.3d 1425, 1436 (11th Cir. 1998).  To do so, plaintiff must show that no reasonably objective police officer would have perceived there to be probable cause for the arrest.  <u>Phillips v. Fla. Fish & Wildlife Conservation Comm'n</u>, 325 F. App'x 864, 865 (11th Cir. 2009).

An officer must conduct a constitutionally sufficient investigation before making an arrest.  <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1228-30 (11th Cir. 2004); <u>Rankin</u>, 133 F.3d at 1435-36.   While officers may not ignore known exculpatory information in deciding whether to arrest, they need not explore every proffered claim of innocence or take every conceivable step to eliminate the possibility of convicting an innocent person. <u>Kingsland</u>, 382 F.3d at 1229; <u>Rankin</u>, 133 F.3d at 1435.  An officer may normally rely on a victim's criminal complaint to support probable cause.  <u>Rankin</u>, 133 F.3d at 1441; <u>Singer v. Fulton Cnty. Sheriff</u>, 63 F.3d 110, 119 (2d Cir. 1995) ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with a crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.").  In deciding whether probable cause exists, an officer is "not required to sift

-26-

through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed. Nor does probable cause require certainty on the part of the police ." Dahl v. Holley, 312 F.3d 1228, 1234 (11th Cir. 2002) (citations omitted).  Additionally, "a police officer need not credit everything a suspect tells him", Rodriguez v. Farrell, 294 F.3d 1276, 1278 (11th Cir. 2002), and "is not required . . . to resolve all inferences and all factual conflicts in favor of the suspect." Bailey v. Bd. of County Comm'rs, Alachua Cnty., Fla., 956 F.2d 1112, 1120 n. 5 (11th Cir. 1992).

An officer who has probable cause to arrest may constitutionally arrest a suspect without civil liability. "[T]he existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." Brown, 608 F.3d at 734.  "An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest." Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003).  See also Jordan v. Mosley, 487 F.3d 1350, 1355 (11th Cir. 2007).  An officer has probable cause to arrest when the arrest is objectively reasonable based on the totality of the circumstances.  Coffin v. Brandau, 642 F.3d 999, 1006 (11th Cir. 2011). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause

a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  <u>Coffin</u>, 642 F.3d at 1006-07.

Probable cause need only exist for some criminal offense; it does not matter that an officer believed he was arresting a suspect for a different offense.  <u>Knight v. Jacobson</u>, 300 F.3d 1272, 1275 n. 2 (11th Cir. 2002); <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1196 (11th Cir. 2002) ("[W]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." (citation omitted)).  Additionally, the fact that the arrestee was never prosecuted, or the charges were dropped, or he was acquitted of any offense stemming from the arrest, does not impact the existence of probable cause.  <u>Jacobson</u>, 300 F.3d at 1275; <u>Ferraro</u>, 284 F.3d at 1195-96; <u>Marx v. Gumbinner</u>, 905 F .32d 1503, 1507 (11th Cir. 1990); <u>Howell v. Tanner</u>, 650 F.2d 610, 615 (5th Cir. Unit B July 1981) ("Once probable cause has been established, the legality of the arrest is not affected by . . . a subsequent dismissal or acquittal of the charges.").

The Fourth Amendment also prohibits a police officer from knowingly or recklessly making false statements in an affidavit in support of an arrest warrant.  <u>Kelly v. Curtis</u>, 21 F.3d 1544 (11th Cir. 1994).  "The Warrant Clause of the Fourth Amendment requires

-28-

that warrant applications contain sufficient information to establish probable cause." Holmes v. Kucynda, 321 F.3d 1069, 1083 (11th Cir. 2003) (citing Franks v. Delaware, 438 U.S. 154, 164, (1978)). The "obvious assumption is that there will be a truthful showing" to establish probable cause. Franks, 438 U.S. at 164–65. While this requirement of truthfulness "does not dictate that the statements be objectively accurate, it does require that they "be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." Holmes, 321 F.3d at 1083 (quoting Franks, 438 U.S. at 165). A police officer may be held liable under 42 U.S.C. § 1983 for submitting an application for an arrest warrant that contains false information in this sense. Holmes, 321 F.3d 1083; Malley v. Briggs, 475 U.S. 335, 346 (1986). Because an arrest warrant is presumptively valid, Franks, 438 U.S. at 171, plaintiff must establish that probable cause would have been lacking absent the alleged misrepresentations or omissions, United States v. Gamory, 635 F.3d 480, 490 (11th Cir.2011). A judge's decision to issue the arrest warrant in such a situation does not absolve the police officer from liability. Garmon v. Lumpkin Cnty., Ga., 878 F.2d 1406, 1409–10 (11th Cir. 1989) (citing Malley, 475 U.S. at 344).

If a constitutional violation has occurred because an officer lacked probable cause, the Court next considers whether arguable probable cause existed for the § 1983 claims. Case, 555 F.3d at

1327.  An officer who makes an arrest without actual probable cause is nonetheless entitled to qualified immunity in a § 1983 action if there was "arguable probable cause" for the arrest.  Brown, 608 F.3d at 734; Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (officials are entitled to immunity for an unlawful arrest claim so long as there was probable cause or arguable probable cause for the arrest); Coffin, 642 F.3d at 1006 (same).  Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." Kingsland, 382 F.3d at 1232 (quotation marks omitted); Brown, 608 F.3d at 734.  The arguable probable cause standard is an objective standard which does not consider an officer's subjective intent or beliefs. Brown, 608 F.3d at 735, 736.  Showing probable cause or arguable probable cause does not, however, require proving every element of a crime.  Jordan, 487 F.3d at 1355 ("No officer has a duty to prove every element of a crime before making an arrest."); Brown, 608 F.3d at 735; Scarbrough v. Myles, 245 F.3d 1299, 1302–03 (11th Cir. 2001).  If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply.  Skop, 485 F.3d at 1138; Grider v. City of Auburn, Ala., 618 F.3d 1240 (11th Cir. 2010).

If a constitutional violation has occurred because of false statements or omissions in an arrest warrant affidavit, the Court

examines the officer's eligibility for qualified immunity.  If a reasonable police officer would have known that information in the affidavit was not just negligently false, but recklessly so, then officer is not entitled to qualified immunity.  <u>Kelly</u>, 21 F.3d at 1554; <u>Holmes</u>, 321 F.3d at 1083.  Qualified immunity will not shield an officer from liability for intentional false statements in an arrest affidavit if such false statements were necessary to the probable cause.  <u>Jones v. Cannon</u>, 174 F.3d 1271, 1286 (11th Cir. 1999).

### a.  Counts V and X

To the extent plaintiff seeks to a assert a § 1983 claim against Berg pursuant to the Fourth Amendment for submitting a false affidavit, summary judgment is granted in defendant's favor. Viewed in the light most favorable to Hill, the facts do not support a conclusion that Berg's warrant application included deliberately false statements about the incidents leading to Hill's arrest.  Berg attested that on December 4, 2008, Heinz positively identified Hill as the perpetrator in a photographic line-up.  This is supported by the evidence submitted by defendants and Hill has not provided any evidence to the contrary.  (Doc. #44-3, p. 4.) Berg further attested in her affidavit that Heinz compared the photograph on the license used with the perpetrator and Heinz believed that it was the same person.  This is also supported by Heinz's Teller affidavit and Hill has not provided contrary

evidence.  (Doc. #44-3, pp. 5-6.)  Berg's affidavit also attested that the perpetrator used Hill's driver's license and social security card which is undisputed by the plaintiff.  Other than Hill's conclusory allegations that Berg lied in her affidavit, there are no facts that suggest that the probable cause affidavit included deliberately false statements or was otherwise reckless. Accordingly, summary judgment is granted in favor of Berg for Counts V and X, to the extent they seek to assert a Fourth Amendment violation for submitting a false affidavit.

### b.  Counts II and III

The Court finds that at least arguable probable cause existed to arrest Hill and therefore the defendants are entitled to qualified immunity.  Hill asserts that the probable cause affidavit contained misrepresentations because Heinz did not identify Hill as the perpetrator when he was investigated by Long and that his subsequent statements that he could identify Hill as the perpetrator were erroneous because the surveillance camera photographs conclusively demonstrated that he was not the perpetrator.  He further claims that the probable cause affidavit contains false statements because Heinz did not truthfully identify Hill as the perpetrator.

The probable cause affidavit, even without these alleged false statements, would be sufficient enough to provide at least arguable probable cause for Hill's arrest.  Viewed in the light most

favorable to plaintiff, these material facts were known to defendants at the time of his arrest: (1) on November 17, 2008, a man entered the Bank of Florida to cash a check; (2) the check was made out to defendant Hill; and (3) the check was fraudulent; (4) the person who attempted to cash the check used Hill's driver's license and social security card.  A reasonable officer in the same circumstances and possessing the same knowledge could have believed that plaintiff had committed the crimes of uttering a false instrument and grand theft, the crimes for which Hill was arrested.

The existence of the surveillance photographs, alone, does not alter this conclusion.  As mentioned above, in deciding whether probable cause exists, an officer is "not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed.  Nor does probable cause require certainty on the part of the police." Dahl, 312 F.3d 1228, 1234 (11th Cir. 2002) (citations omitted).  Because the Court finds arguable probable cause, the defendants have qualified immunity on Counts II and III and summary judgment is therefore granted in defendants Long, Berg, Washer, and Scott's favor.

Accordingly, it is now

**ORDERED:**

1. Defendants' Lee County Sheriff's Office, Community Service Aid Jack Long, Detective Barbara Berg, Sergeant Jonathan Washer,

and Sheriff Mike Scott's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. #44) is **GRANTED**.

2.   Defendants' Everbank and Heinz Motion to Dismiss (Doc. #66) is **GRANTED**.

3.   Counts I, IV, VI through IX, and  XI are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

4.   Counts V and X, to the extent they seek to assert a claim pursuant to 18 U.S.C. § 1621 and a Fourth Amendment violation against Frank Heinz are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  To the extent Counts V and X seek to assert a Fourth Amendment claim against Detective Barbara Berg, summary judgment is granted in favor of Detective Barbara Berg and against Eddie Hill pursuant to Fed. R. Civ. P. 56.

5.   Summary Judgement as to Counts II and III is granted in favor of defendants Community Service Aid Jack Long, Detective Barbara Berg, Sergeant Jonathan Washer, and Sheriff Mike Scott and against plaintiff Eddie Hill pursuant to Fed. R. Civ. P. 56.

5.   The Clerk shall enter judgment accordingly, terminate all pending motions and deadlines, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this   24th   day of September, 2012.

Copies:

Counsel of record

_____

**JOHN E. STEELE**
**United States District Judge**